## CHARLES H. OSGOOD vs. GEORGE W. CARVER AND OTHERS.

A writ of replevin for goods unlawfully detained ran as follows: "You are hereby commanded to cause to be replevied to P his certain chattels, viz: (describing them) now in the possession of C at P and by him unlawfully detained; and you are to attach to the value of one thousand dollars the goods or estate of said                    and him summon to appear before the Superior Court, &c., in a plea wherein the plaintiff complains that the defendant has unlawfully detained and still unlawfully detains said chattels, &c." Held that the writ was not void by reason of the omission of the defendant's name in the clause directing the attachment and summons.

A process valid on its face protects the officer who serves it.

The goods taken by the officer under the writ of replevin were the same goods which the writ directed to be replevied, but were in fact in the possession of the sheriff under legal process, though in the house of C and apparently in in his possession, as described in the writ. The officer did not know of the sheriff's possession and acted in good faith. Held that the officer was not liable in trespass to the sheriff as having taken goods which he was not authorized to take by his process.

Two persons assisted the officer in taking the goods who had acted wrongfully

in procuring the process. Held that, whatever might be their liability in a proper action, they were not liable in trespass.

Also that they were not liable in trover for the goods taken, so long as the replevin suit was still pending and the goods were in the custody of the law.

The fact that a party whose property was taken upon such a process, was not himself a party upon the writ, does not enable him to maintain trespass for the taking, so long as the property taken is the same which the writ directed to be replevied.

TRESPASS for taking and carrying away a quantity of cotton yarn, with a count in trover; brought to the Superior Court in New London County. The defendants were George W. Carver, Thomas Pray, Jr., and Fernando O. Jacques. They jointly pleaded the general issue, with notice that evidence would be offered that the defendant Carver took the yarn in question as an officer in service of a writ of replevin in favor of the defendant Pray, and that Pray, through Jacques as his agent, had procured the writ of replevin, and that Jacques as such agent, had directed and assisted in the taking of the yarn. The writ of replevin ran as follows:

By authority of the State of Connecticut, you are hereby commanded without delay to cause to be replevied to Thomas Pray, Jr., of Providence, in the state of Rhode Island, certain goods and chattels, to wit: one parcel of white cotton yarn in skein, of the said Thomas Pray, Jr., and of the value of one hundred and ten dollars, now in the possession of N. D. Cady, of said Putnam, at said Putnam, and by him as it is said unlawfully detained; and you are to attach to the value of one thousand dollars the goods or estate of said

and him summon to appear before the Superior Court, to be holden at Brooklyn, on the 4th Tuesday of August, 1873, then and there to answer unto the said Thomas Pray, Jr., in a plea wherein the plaintiff complains that ever since the 8th day of November, 1870, the defendant has unlawfully detained and still unlawfully detains the said goods and chattels of the plaintiff, to his damage the sum of two hundred dollars; and therefore he brings this suit.

The writ was accompanied by a recognizance with surety, for the payment of all damages recovered by the defendant in the suit, and all cost, and for a return of the property replevied

if the plaintiff in the suit should fail to establish his right to the same.

The case was referred to a committee, who made the following finding of facts.

The yarn in question was attached by the plaintiff as sheriff of the county, on the 8th of November, 1872, at the suit of John Irwin against the said Fernando O. Jacques, and was then taken into the plaintiff's possession and was by him deposited in the house of N. D. Cady, in an unoccupied room of the house.

The yarn at the time of the attachment was the property of the defendant Jacques. Irwin recovered judgment against Jacques at the January term of the Superior Court for Windham County, 1873, for $208.65 damages, and $16.51 costs, and thereupon took out execution. The plaintiff, as sheriff, on the 22d of March, 1873, levied the execution on the yarn, and posted the same for sale on the execution according to law. On the 5th of April, 1873, the yarn was taken out of the plaintiff's possession under the above writ of replevin against N. D. Cady, in whose house the yarn continued to be deposited, from the time it had been left there by the plaintiff, November 8th, 1872, down to the 5th of April, with no other change except that the plaintiff had levied the execution on it as before stated. The yarn was not then and never had been in the possession of Cady, but was and had been from the 8th of November, 1872, in the possesssion of the plaintiff, as sheriff, under the attachment and levy. The yarn was taken by the defendant Carver, as constable, within his precincts, he acting bonâ fide; finding the property in Cady's house he believed it to be in his possession. The defendant Jacques acted as the agent of the defendant Pray, and by his authority directed the taking by the constable, and was present aiding the taking, and he without delay carried the yarn into Rhode Island. Jacques knew that the yarn was not in the possession of Cady, and that it did not belong to Pray, and that it was in the sheriff's possession under legal process. This knowledge of the agent in the opinion of the committee was imputable to his principal, but the latter was not in fact

aware of the fraudulent use which was made of the process in his name.

The defendant claimed that the plaintiff's action was misconceived, and that upon the foregoing facts the action of trespass and trover was not sustainable. The plaintiff claimed that he could maintain trespass inasmuch as he was not a party to the action of replevin, and inasmuch as the replevin writ authorized only the taking of goods in Cady's possession and not the taking of goods in the plaintiff's possession. He also claimed that the writ of replevin was void upon its face, as it did not name any person as the party defendant. The committee being of the opinion that the plaintiff was entitled to recover in this action against the defendants Jacques and Pray, found the issue against them, and that the plaintiff recover of them $200 damages and his costs. If, however, upon the facts found the court should be of opinion that the plaintiff's action was misconceived, then the committee found the issue for the defendants. And as to the defendant Carver, inasmuch as he acted as a public officer within the apparent scope of the process committed to him, the committee found the issue in his favor. If, however, upon the facts found the court should be of opinion that he was not justified by his process, then the committee found the issue against him and the other defendants, and that the plaintiff recover of the three defendants the above damages and costs.

Upon these facts the case was reserved for the advice of this court.

*J. M. Lyon* and *C. E. Searls*, for the plaintiff.

1. The process under which the defendants seek to protect themselves, is void upon its face, and therefore no protection. No one is named in it as the defendant who is to be summoned to appear and answer to the action.

2. If the process is valid, yet it was wholly misapplied in taking under it the property in question. It authorized only the taking of property in the possession of N. D. Cady, whereas the property taken was in the possession of the pres-

ent plaintiff as sheriff.  1 Chitty Pl., 184; 2 Hilliard on Torts, chap. 29, sec. 5.

3.  Trespass may be maintained by a stranger to the process, whose property has been wrongfully taken under it.  It is as to him a mere unauthorized act, and of course a trespass. 2 Hilliard on Torts, chap. 29, secs. 5, 8, 9, 10; *Commonwealth* v. *Kennard*, 8 Pick., 133; *Codman* v. *Freeman*, 3 Cush., 306; *State* v. *Downer*, 8 Verm., 424; *State* v. *Miller*, 12 id., 437; *Moulton* v. *Jose*, 25 Maine, 76.

4.  If the process is sufficient to protect the officer, yet the other defendants, who wrongfully and with a knowledge of all the facts, prayed out the process, and put it in the officer's hands, can not protect themselves by it, and especially against a stranger to the process whose property was wrongfully taken under it.  1 Hilliard on Torts, chap. 3, sec. 25a.

5.  If none of the defendants are liable in trespass, yet these two defendants, who carried away the property, are liable in trover.  2 Hilliard on Torts, chap. 25, sec. 3.  The removal of it out of the state and beyond the reach of the plaintiff was a conversion.  *Luckey* v. *Roberts*, 25 Conn., 492. No demand was required.  *Gentry* v. *Madden*, 3 Ark., 127; *Kyle* v. *Gray*, 11 Ala., 233; 2 Hilliard on Torts, chap. 25, secs. 8, 12.  Especially where the property was obtained by fraud.  2 Hilliard on Torts, chap. 25, sec. 6.

*S. H. Seward* and *M. A. Shumway*, for the defendants.

FOSTER, J.*  The defendants justify the trespass complained of, under a writ of replevin, which directed the taking of the property in question.  The plaintiff claims that that writ was void on its face.  Void process, of course, is no protection for acts done under it; the party serving it is in the position of a mere wrong-doer.  There are some informalities in this process, but we are clearly of opinion that it is not void.

The question then is, how far, if at all, does this process,

* This case was submitted on briefs, and Judges PARK and FOSTER joined in the decision though not present at the term.

which we recognize as valid, afford protection to the defendants for the acts done?

And first, as to the officer. The process placed in his hands directed that he "cause to be replevied to Thomas Pray," &c., "one parcel of white cotton yarn, in skein," &c., "now in the possession of N. D. Cady, of Putnam, and by him, as it is said, unlawfully detained." That the law required him, as an officer, to execute this precept, and would have subjected him to penalties, if without adequate cause he had failed to do so, cannot be doubted.

Under these circumstances it is certainly a bold claim to make, that the officer becomes a trespasser simply by serving this process. He had in his hand a lawful mandate; he was bound to obey it; he did obey it; and that such obedience should constitute a trespass is repugnant alike to every sound principle of justice and of law.

But it is said that the officer misapplied the process; that he was directed to take goods in the possession of Cady, and he took those in the possession of Osgood.

If an officer goes outside of his precept; if, when commanded to attach the goods of *A*, he takes the goods of *B*, no doubt he is a trespasser. Nothing like that however has occurred here. These goods were in fact in Cady's house, apparently in his possession, though legally in the possession of Osgood. There is no doubt but that they were the identical goods against which the process was aimed, and which the precept commanded the officer to replevy. Carver, the officer, then is clearly not guilty of trespass.

How is it with the other defendants, Jacques and Pray? All the defendants unite in a joint plea, and rest their defence upon the process under which they acted. It is found that the officer acted bonâ fide, but that Jacques knew that the yarn was not in the possession of Cady; that it did not belong to Pray; and that it was in the sheriff's possession under legal process. This knowledge of Jacques, the agent, the committee finds should be imputed to Pray, the principal, though in fact it was not communicated to him.

That these defendants should be held liable for wrongs so

gross and so palpable as these, and liable too in the full amount of damages sustained, admits of no question ; but are they liable in trespass ?

The case of *Watson* v. *Watson*, 9 Conn., 140, and the very recent case of *Cannon* v. *Sipples*, 39 Conn., 505, answer this question so decidedly in the negative that we must consider it settled Those cases are identical, in principle, and almost in detail, with this. In *Watson* v. *Watson* the plaintiff in replevin and the officer were both sued, and both knew that the horse which was replevied did not belong to the plaintiff in replevin; that he had not been distrained or impounded; that there was no cause of action, and no right to replevy. Yet they took him by force out of the possession of his owner, and the court, speaking by Chief Justice HOSMER, say, p. 148, " Most clearly it was not a trespass." The act was done by virtue of a legal process. If that process protects the one who does the principal act, it does not seem reasonable to make a distinction against those who procure the process to be instituted, or who render incidental aid in serving it. We think the other two defendants are not trespassers.

These two defendants would undoubtedly however be liable upon the count in trover if it appeared that the property was not still in the custody of the law, but as nothing is found on the subject it is to be presumed that the custody of the law is not yet terminated by a final judgment in the replevin suit; at any rate we can not presume the contrary. The fact that the property was delivered by the officer to these two defendants is entirely consistent with a continued custody of the law, as their possession may have been under him and subject to his control.

The rights of this plaintiff to this property, as bailee, or owner, surely could not have been taken away, or impaired, in any degree, had he been made a party in the action of replevin. Every form of redress to which a bailee or owner could be entitled, would have remained his; not being a party, he can be entitled to no more. If property other than that described in the writ of replevin be taken on the writ, whether it belongs to the defendant in the writ or a third person, no doubt trespass would lie.

We advise the Superior Court to render judgment for the defendants.

In this opinion the other judges concurred; except CARPENTER, J., who was of opinion that judgment should be rendered against the defendants Pray and Jacques upon the count in trover.