McGann v. Allen.

---

GERTRUDE McGANN vs. EDWARD N. ALLEN ET ALS.

First Judicial District, Hartford, May Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Where an abuse of process is unaccompanied by malice, compensatory damages only may be recovered, that is, compensation for the natural consequences of the act, including injury to the feelings and to the person, and special damages such as loss of business or property or the expense of curing physical or mental injury or of protecting the person from arrest or confinement. If malice is involved, exemplary damages may also be added, but this amount is limited to the expenses of the action, including counsel fees but exclusive of the taxable costs.

All who engage in a malicious prosecution, or a false imprisonment, or an abuse of process, by knowingly procuring, directing, aiding, abetting, assisting, or subsequently adopting it, are liable as joint tort-feasors.

The essentials of an action for malicious prosecution are the discharge or acquittal of the plaintiff, the lack of probable cause for the prosecution, and the existence of malice on the part of the defendant.

Malice may be inferred from want of probable cause, or may be proved to exist in fact for the purpose of enhancing the damages; but want of probable cause can never be inferred from any degree of actual malice.

Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for instituting a prosecution; it is an absolute defense, even when express malice is proved.

An action for false imprisonment lies in the case of a detention without process or with a process void on its face, but not for an abuse committed in the use of a process valid on its face.

An officer must carry out the command of a process literally, provided it is reasonably possible, and if prevented by some intervening emergency or condition, he must then do so as soon as he reasonably can.

When an officer, arresting one upon a warrant, uses against him unreasonably excessive force, or otherwise subjects him to oppression, as by taking and detaining him in a place other than that directed in the process, or permits the process to be used to extort money from him, he has abused the process and is liable in damages therefor.

In the present action for malicious prosecution, false imprisonment and abuse of process, the jury might reasonably have found these facts: during the investigation of thefts occurring in the store in Hartford of which he was general manager, the defendant A was shown a written confession made by a saleswoman who declared that she had taken goods from the store and sold them to the plaintiff at sums known to be far below the selling price; and acting upon the advice of the defendant McK, his lawyer, A solicited the assistance of the police and the defendant M, a detective sergeant, was assigned to the case. Thereafter the prosecuting attorney of the Police Court was consulted and, under his instructions, McK, accompanied by A and M, procured from the office of the clerk of the court, a complaint and warrant signed in blank, which the prosecutor later filled in when informed of the facts. With this warrant, the three defendants went to the plaintiff's home about one o'clock in the morning, she was placed under arrest by M, and driven by A in his automobile to his office in the store, where for half an hour, she was confronted by the three defendants and other persons, who repeatedly urged her to admit her guilt and to make a settlement. Upon her steadfast refusal, she was

McGann *v.* Allen.

taken to the police station, released upon the giving of a bond and, though convicted upon the charges made against her in the Police Court, she was later acquitted upon appeal to the Superior Court. The trial court directed verdicts for the defendants A and McK upon all three counts, and instructed the jury that the only cause of action against M was for abuse of process; whereupon the jury returned a verdict for $6,000 against this defendant, which the trial court ordered set aside unless a *remittitur* of $5,250 was filed. *Held:*

1. That the trial court did not err in setting aside the verdict which, in view of the absence of evidence as to any element of compensatory damage except the injury to her feelings, and of the failure of the charge to instruct the jury adequately upon the subjects of compensatory and exemplary damages, was excessive.

2. That the direction of verdicts for the defendants upon the issues of malicious prosecution and false imprisonment was proper.

3. That the trial court erred in directing verdicts for A and McK upon the issue of abuse of process, since their liability as joint tort-feasors with M, was a question of fact for the jury.

4. That the warrant signed in blank and issued as it was, was void under § 212 of the Hartford charter; but that its invalidity was of no avail to the plaintiff because not pleaded.

5. That the expenses incurred by the plaintiff in defending herself against the criminal charges were not recoverable in an action for abuse of process.

Argued May 5th—decided October 18th, 1926.

ACTION to recover damages for alleged false arrest, false imprisonment, abuse of process and malicious prosecution, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* the court directed a verdict for the defendants Allen and McKone, and the jury returned a verdict for the plaintiff to recover $6,000 from the defendant Madigan, which the court, upon the plaintiff's refusal to file a *remittitur* of $5,250, set aside as excessive, and from this decision the plaintiff appealed. *Error and new trial ordered.*

*Edward J. Daly,* with whom was *Herbert Spencer,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant James H. Madigan).

WHEELER, C. J. We take up first the assignment of error based upon the setting aside of the verdict. The plaintiff offered evidence to prove that: At about one o'clock ·on the morning of February 19th, 1925, after plaintiff had retired, the defendant Madigan, an officer on the Hartford police force, came to her residence, informed her that he had a warrant for her arrest, that a Mrs. Blasdell, an employee in Sage-Allen Company's store, had made a confession that she had stolen several thousand dollars worth of their goods and had sold plaintiff two dresses knowing the price was way below the selling price. Officer Madigan placed her under arrest, and they left the house and entered a closed automobile in .front of the house driven by defendant Allen, the general manager of the Sage-Allen store. Plaintiff sat in the front seat with Allen; as the latter drove along he accused plaintiff of buying these goods of Mrs. Blasdell, and she replied, "I did not," and he said, "I can prove it." The automobile stopped at Sage-Allen's store, although she had not been told she was to be taken there, and she was taken into the store and up to Allen's office. Seated in the office were several men, Allen and McKone, who are defendants, McGinley, Eastman, a detective for another department store, Gavin, and another man and a Mrs. Gotis. A general conversation ensued about Mrs. Blasdell's selling these goods to plaintiff, and then she was left alone with Eastman and while there McKone came in and among other things said, "Now, why argue about this thing; why don't you admit that you bought it and settle for it?" Plaintiff replied, "No, I am not going to settle for anything that I have not done." And at this time Allen and Madigan

were in the room and Madigan said, "Aren't you going to settle for it?" and plaintiff replied, "No," and Eastman repeatedly said, "Don't you realize you are under a five thousand dollar bond? You don't want to have to go down to the police station and stay all night?" McKone continued to urge her to settle. At Allen's suggestion Mrs. Blasdell was brought down and asked by McKone if she sold plaintiff a suit, and said, "No, a tan dress." Plaintiff said she had not bought it, and Mrs. Blasdell advised her to settle, saying Allen was going to be very fair. Plaintiff later asked if she was under arrest, and Allen said, "Yes," and she said, "If I am, I want you to take me to the police station," and then turned to Madigan and said, "You did not have any right to bring me here, did you?" And he answered, "I thought you would much prefer to come here and settle this thing." Thereafter both McKone and Eastman said they believed plaintiff was innocent, and asked Allen, "Why make her admit or settle this if she hasn't done it?" But Allen replied, "No, she is not telling the truth." After being in the store a half hour plaintiff was taken to the police station, and put in a cell in the matron's room for about twenty minutes when she was released on giving a bond. The case was called in the Police Court on February 19th, and continued to February 24th, when plaintiff was tried, found guilty and appealed to the Superior Court. The case was there tried to the court and plaintiff was acquitted.

The information on which plaintiff was tried in the Police Court charged her in the first count with stealing goods of the Luke Horsfall Company of the value of $50, and in a second count with receiving stolen property, the goods of the Sage-Allen Company, of the value of $50. Plaintiff was working in New York City

at the time she is charged with stealing the goods of Luke Horsfall Company.

Plaintiff suffered indignity and humiliation from being arrested, taken to Sage-Allen Company's store and from the trials in the Police Court and in the Superior Court, and has also suffered mental anxieties and worries through these and the attendant publicity resulting from the court trials and the newspaper accounts of the matter. She has had and has as a result a slight condition of nervousness requiring a physician's care, not at present serious, but she is subject to conditions that are disturbing. She has expended for attorney's services and expenses, $520 in the trials in the Police Court and in the Superior Court.

The defendants offered evidence to prove that: For some time prior to February 18th, 1925, Sage-Allen Company, which conducted a department store in Hartford, had suffered losses in its cloak and suit department. The company employed Pinkerton's Detective Agency to investigate these losses, and on this day its detective McGinley, procured from Mrs. Blasdell, an employee of this company, a statement in which she said she had taken goods of the value of $5,400 from the company, and delivered them to four of her friends and had sold to plaintiff some of these goods at a price less than their selling price, and used the money received for her own use. When defendant Allen returned from Springfield at about six o'clock on the afternoon of this day he was shown this confession, and at once communicated with defendant McKone, a practicing lawyer for upward of ten years in Hartford, who later came to the store, saw this confession and advised Allen to communicate with the police department of Hartford. As a consequence of this advice the department was communicated with and Detective Sergeant Madigan (one of the defendants) detailed on

the case.   After he had seen the confession either he
or McKone communicated with Bonee, the prosecut-
ing attorney of the Police Court of Hartford, and by
his direction McKone went to the Police Court and
took from the desk of the clerk of the court a blank
complaint and warrant signed by the clerk.   Allen and
Officer Madigan accompanied McKone to the clerk's
office.   The complaint and warrant were handed Bonee
by McKone, and he was apprised of the confession
and thereafter filled in the blank spaces and handed it
to Officer Madigan to serve.

Defendants McKone and Madigan then returned to
Sage-Allen Company's store and Allen later drove
them and Officer Hickey to plaintiff's residence in his
car.   The plaintiff was there arrested under this war-
rant by Sergeant Madigan and taken in an automobile,
driven by Allen, to the Sage-Allen store and there
informed by the three defendants of the confession of
Mrs. Blasdell that plaintiff had received stolen goods
belonging to that company.   No suggestions were made,
except by Officer Madigan, that plaintiff be taken to
this store.   Prosecutor Bonee issued the warrant upon
information given him by Officer Madigan, and upon
inspection of the statement of Mrs. Blasdell and upon
his own responsibility and was not influenced in its
issue or in what he did by McKone or Allen.   No
objection was made by plaintiff to her going to this
store and the purpose of Officer Madigan in taking her
there was to secure a confession from her, and to have
her face the person who had made the confession.   No
suggestion was made to plaintiff of settlement while
at the Sage-Allen store by either of the defendants, or
anyone else.   The plaintiff was taken to the police sta-
tion upon her own request immediately after she had
insisted upon her innocence and refused to make a con-
fession, and after having been at the store about fifteen

minutes in all. The warrant under which plaintiff was first arrested on February 19th, charged her with having jointly received stolen property with others.

While the case was pending, the prosecutor having become satisfied that he could not maintain the charge as first made and having determined to charge them individually, destroyed this warrant and caused to be issued another warrant charging plaintiff with lesser offenses, viz.: In count one, with having received stolen property from Luke Horsfall Company, and in count two, with having received stolen property from Sage-Allen Company. The first count was nolled and she was found guilty on the second count.

The court set aside the verdict of $6,000 against Officer Madigan as excessive. Under the charge of the court the only issue was as to whether the taking of the plaintiff while under arrest to the store of the Sage-Allen Company instead of to the police station was an abuse of process. Damages suffered through an abuse of legal process not malicious must be compensatory, that is compensation for the natural consequences resulting, which would include injury to the feelings because of the humiliation, disgrace or indignity suffered, together with injury to the person and physical suffering, as well as special damage incurred in consequence of the wrong, as loss to one's business or property, or expense caused in curing the physical or mental injury, or in protecting one's person from arrest or confinement. The only expense caused the plaintiff was the $520 paid her attorney in the trial of the criminal actions against her, and this has no relation to the action for abuse of process. The only element of compensatory damages involved was the injury to her feelings. If, in addition, the jury found the abuse of process was accompanied with malice they might have added a sum as exemplary damages which under our

rule was not to be assessed within their uncontrolled discretion but must be confined to the expenses of this action but be exclusive of the taxable costs and including counsel fees, as to the cost of which no evidence was offered by the plaintiff. It is very evident that the damages assessed by the jury were very greatly excessive. In the charge the court instructed the jury that the plaintiff was entitled to compensation for any humiliation or disgrace suffered, and that the damages were to be fixed according to their best judgment. In no part of the charge was the subject of compensatory damages, or the limitations upon exemplary damages explained, nor was the jury cautioned against finding the damages beyond these fixed bounds of the law. In this class of cases instruction of this character is indispensable to just verdicts. The court was right in setting aside the verdict.

We next consider the assignment of error in directing a verdict for defendants Allen and McKone. The allegations of the complaint charge against all three defendants malicious prosecution, false imprisonment and abuse of process. All who knowingly procure, direct, aid, abet or assist in, or subsequently adopt either of these three charges are liable as joint tort-feasors for the damage done by the malicious prosecution, false imprisonment or abuse of process. *Hackett v. King,* 88 Mass. (6 Allen) 58; *Hyde v. Cooper,* 26 Vt. 552; *Snydacker v. Brosse,* 51 Ill. 357.

In an action for malicious prosecution three things are essential: (1) The discharge of the plaintiff; (2) that the prosecution was without probable cause; (3) that it was malicious. *Thompson v. Beacon Valley Rubber Co.,* 56 Conn. 493, 499, 16 Atl. 554. In the instant case the plaintiff was acquitted. Malice may be implied from the want of probable cause. But actual malice may be proved to enhance the damages. So

that the element in controversy was that the defendant was without probable cause for procuring this prosecution. Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for prosecuting the defendant for the charge complained of. *Shea* v. *Berry,* 93 Conn. 475, 477, 106 Atl. 761; *Thompson* v. *Beacon Valley Rubber Co.,* 56 Conn. 493, 16 Atl. 554.

The conceded facts show plainly that Officer Madigan had nothing to do with the procuring of this prosecution, and that defendants Allen and McKone knew nothing of the plaintiff's connection with this charge until they saw the confession of Mrs. Blasdell and heard the statements of the others charged with similar offenses. Allen was advised by his attorney to present the case against the plaintiff to the police officials and did so under his direction. The circumstances disclose that Allen fairly presented or caused to be presented the facts to McKone, his counsel, and relying upon his advice communicated with the police department. He had under the circumstances the right to rely upon that advice, and he cannot be liable in an action for malicious prosecution for the consequences of that action provided he acted upon it in good faith. McKone cannot be held liable for malicious prosecution unless he instituted or procured the prosecution, or aided and abetted Allen in procuring it, when there was no probable cause for it. The undisputed facts relieve the defendant McKone from liability for malicious prosecution. There is nothing to indicate that Allen or McKone entertained the idea when complaint was made to the prosecutor, to use the process when procured, for the purpose of compelling the plaintiff to settle for the cost of the goods which Mrs. Blasdell in her statement said plaintiff had obtained. If that had been their purpose it would tend

to show their malice. The circumstances then present including the confession of Mrs. Blasdell would, irrespective of the proof of malice, be sufficient to justify a reasonable man in the belief that they gave him reasonable grounds for prosecuting the plaintiff for the crime of which Mrs. Blasdell charged her. "If probable cause exists, it is an absolute protection against an action for malicious prosecution, even when malice is proved." *Shea* v. *Berry,* 93 Conn. 475, 478, 106 Atl. 761; *Thompson* v. *Beacon Valley Rubber Co.,* 56 Conn. 493, 16 Atl. 554. Malice may be inferred from a want of probable cause, but the want of probable cause cannot be inferred from any degree of express malice. *Stewart* v. *Sonneborn,* 98 U. S. 187, 194; Newell on Malicious Prosecution (Ed. 1892) p. 263, § 3.

We take up next the charge of false or unlawful imprisonment. The complaint does not allege the invalidity of the warrant upon which the plaintiff was arrested. We must therefore assume it to have been regular on its face; the testimony fully supports this conclusion both as to the warrant upon which plaintiff was arrested and that upon which she was finally prosecuted. "A process valid on its face protects the officer who serves it." *Osgood* v. *Carver,* 43 Conn. 24. The fact that the prosecutor elected to prosecute the plaintiff upon a different warrant from that on which she was arrested is of no consequence.

The action for false imprisonment lies in the case of a detention without process, or without a process valid on its face. The general rule is that the action does not lie against an officer, or against one who procured the warrant, for an abuse committed in the use of the process valid on its face. In *Stoddard* v. *Bird,* Kirby, 65, where the detention was upon a process valid on its face but procured by one without a cause of action, it was held that the action for false impris-

onment would lie. The better authority makes the distinction that in the case of a false imprisonment the detention must be wholly unlawful either because the process is void on its face, or the detention is without process. In *Castro* v. *De Uriarte,* 12 Fed. 250, 253, it is said: "The remedy at common law for false imprisonment is by an action of *trespass* for a *direct* injury to the plaintiff through an unlawful arrest, or a detention without legal authority. The arrest or detention may be by process, under color of legal proceedings, or without process, in the absence of any legal proceedings; or it may be through the irregular issuing or service of a process in proceedings otherwise valid." Since no action for false imprisonment is alleged based upon a detention without process, or under a process void on its face, or under a process valid on its face but procured by one without having any cause of action, the defendants cannot be held liable for a false imprisonment.

The complaint does set up another cause of action, that of abuse of process, which may lie for a wrongful use of a process valid on its face. Where the officer arrests one on a warrant charging a crime, and uses against him excessive force, or otherwise subjects him to oppression, or permits the process to be used to extort money from him, he has abused the process in his hands for service, and is liable in damages for such abuse. *Hyde* v. *Cooper,* 26 Vt. 552; *Snydacker* v. *Brosse,* 51 Ill. 357; Newell on Malicious Prosecution (Ed. 1892) 78; 25 Corpus Juris, 444. "If an officer goes outside of his precept; if, when commanded to attach the goods of *A,* he takes the goods of *B,* no doubt he is a trespasser." *Osgood* v. *Carver, supra,* page 29.

In *Wood* v. *Graves,* 144 Mass. 365, 11 N. E. 567, the court held an action for false imprisonment would lie

"if the acts were done in excess of what was authorized, and if the process of the law was abused." While the court supports an action of false imprisonment for an abuse of process, the principles announced are equally applicable to an action for abuse of process. At page 367, it is said: "But the principle is general, and is applicable to all kinds of abuses outside of the proper service of lawful process, whether civil or criminal, that for every such wrong there is a remedy, not only against the officer whose duty it is to protect the person under arrest, but also against all others who may unite with him in inflicting the injury. Perhaps the most frequent form of such abuse is by working upon the fears of the person under arrest for the purpose of extorting money or other property, or of compelling him to sign some paper, to give up some claim, or to do some other act, in accordance with the wishes of those who have control of the prosecution. The leading case upon this subject is *Grainger* v. *Hill*, 4 Bing. N. C. 212, where the owner of a vessel was arrested on civil process, and the officer, acting under the directions of the plaintiffs in the suit, used the process to compel the defendant therein to give up his ship's register, to which they had no right. He was held entitled to recover damages, not for maliciously putting the process in force, but for maliciously abusing it, to effect an object not within its proper scope."

The trial judge was correct in ruling that Officer Madigan abused the process in his hands for service when, instead of obeying its command and taking the plaintiff to the police station, he took her, or caused her to be taken, to the Sage-Allen store and to be detained there for a period of time, estimated by the plaintiff at a half hour and by the defendants at fifteen minutes. An officer abuses a process in his hands for service who fails to carry out its commands literally,

provided this can be done reasonably; some emergency or condition may intervene to prevent this, he must then obey the process as soon as he reasonably may. It is claimed that for the abuse of process by Officer Madigan, if any occurred, Allen and McKone are not in any way responsible. Under the admitted circumstances we are of the opinion that their responsibility was a question for the jury under suitable instruction. If the jury found that these two defendants knowingly participated in the abuse of process which occurred they should be found liable as joint tort-feasors with the officer. Further, if the jury found, as the plaintiff claims, that the purpose of the defendants in taking the plaintiff to the Sage-Allen store was to induce her to repay the Sage-Allen Company for the goods which they believed she had received from Mrs. Blasdell at a price very much below their selling price and knowing them to be stolen goods, the purpose was an unlawful one and the jury should find all of the defendants participating in, or aiding and abetting this purpose, liable for an abuse of the process placed in the hands of Officer Madigan for lawful service.

The plaintiff further claims that the process under which Officer Madigan arrested plaintiff and detained her at the Sage-Allen store, and under which she was taken to the police station and gave bail for her appearance in court, was void because it was never issued by the Police Court in accordance with the provisions of the charter of the city of Hartford. The complaint does not allege that the plaintiff was arrested and detained under a void warrant and therefore that issue is not in the case. Had this issue been raised we should have been obliged to rule that this warrant was void because not issued in conformity to the requirements of § 212 of the charter of Hartford (Ed, 1920). War-

rants signed in blank and issued as this was are of no validity.

The defendants' bill of exceptions to the admission of evidence tending to prove that this warrant was void and not issued in accordance with the charter requirements is well taken as the allegations of the complaint now stand. Since this case as presented upon this record must be tried again solely upon the issue of the abuse of process, it may be helpful if we point out that on that issue, and in the present condition of the record, evidence of the expense incurred by the plaintiff in defending herself against the crimes charged against her in the Police Court and in the Superior Court would not be admissible in evidence. Damage for abuse of process must be confined to the damage flowing from such abuse, and be confined to the period of time involved in taking plaintiff after her arrest, to the store, and the detention there, and to those elements of damage to which we have already referred. It is apparent that these damages must, of necessity, be limited in amount. There is no occasion for discussing other assignments of error except those as to certain rulings on evidence.

The prosecutor was inquired of on cross-examination whether he expected Officer Madigan to bring the plaintiff to the police station when he gave him the warrant to serve. The question was properly excluded. It was immaterial and not cross-examination. McKone, defendant Allen's attorney, was asked whether Mrs. Blasdell's confession was shown him at the Sage-Allen store preceding the issuance of the warrant for the arrest of plaintiff. Exception was taken by plaintiff to the ruling admitting the question. It was admissible as one of the circumstances surrounding this transaction as tending to prove probable cause. Objection was taken to the admission of the question

asked of this witness as to the professional advice he gave Allen preceding the arrest of the plaintiff. The objection was properly overruled. *Smith* v. *King,* 62 Conn. 515, 525, 26 Atl. 1059. The question whether the confession was shown Officer Madigan was also admissible as one of the circumstances tending to prove probable cause. Upon the surrebuttal this witness was asked as to how the warrant was signed. Since plaintiff was then claiming that the warrant was a void warrant and the warrant had been destroyed, this oral evidence of the contents of the warrant would have been admissible provided the issue of the validity of the warrant had appeared in the allegations of the complaint.

There is error and a new trial is ordered.

In this opinion the other judges concurred.